**Allan NISSEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 02–CV–209(DRH).**

United States District Court, N.D. New York.

March 12, 2002.

Lewis & Stanzione (Ralph C. Lewis, Jr., Esq., of counsel), Catskill, NY, for Plaintiff.

Joseph A. Pavone, United States Attorney for the Northern District of New York (James C. Woods, Esq., Assistant United States Attorney, of counsel), Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

On April 1, 2000, plaintiff Allan Nissen ("Nissen") suffered a fracture to his left patella when he fell in the public area of the United States Post Office at Boiceville, New York.[1] Contending that his fall was caused by the actions of a Postal Service employee, Nissen commenced this action seeking monetary damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*[2] A bench trial was held on March 7, 2002. In accordance with Fed. R.Civ.P. 52, what follows constitutes the Court's findings of fact and conclusions of law. For the reasons stated below, judgment is granted to the United States.

### I. Findings of Fact

On the morning of April 1, 2000, a Saturday, Nissen, then sixty-seven, entered the Post Office in Boiceville, where he was a frequent customer, to have a letter weighed for overseas delivery. The parties dispute whether this occurred at approximately 8:30 a.m. or 10:30 a.m., but the clear weight of the credible evidence establishes that the time was approximately 8:30 a.m. As Nissen entered the public area of the Post Office, he passed Joseph B. Stein, another Postal customer, as Stein departed the counter area. Stein had just completed purchasing stamps at the lone counter from Postal Service clerk Donna M. Calrow. Stein had noted that Calrow

---

1. Boiceville is located in Ulster County approximately eighteen miles west of Kingston.

2. Nissen commenced a prior action asserting the same claim on August 7, 2000. *Nissen v. USA*, No. 00–CV–1192 (DRH). After it was determined that the prior action was commenced before completion of proceedings on Nissen's administrative claim, the prior action was dismissed by stipulation of the parties in favor of the above captioned action and all pleadings filed in the prior action were deemed filed in the above captioned action.

had a cold and that she had coughed "a couple times" while serving Stein. Calrow had in fact missed work from Monday through Wednesday of that week because of a cold. As they passed each other, Stein told Nissen in reference to Calrow, "Watch out—she's going to get us all sick." Stein then exited the Post Office.

Nissen, who is 6'1" tall, continued to the counter where he encountered Calrow, who stands 5'1". The two faced each other over the counter and were separated by approximately two feet. No one else was present in the area. Although disputed by the parties, the clear weight of the credible evidence establishes that Calrow then involuntarily coughed toward Nissen, emitting sputum and without turning her head or covering her mouth. As Nissen ducked away from the cough, his feet became entangled and he fell to the floor landing on his left knee. Nissen laughed, said that he had tripped over his own feet, completed his transaction and walked out of the Post Office.

Medical treatment later that day revealed that the fall caused a fracture of Nissen's left patella. Nissen's treatment required him to wear a soft cast on his left leg for approximately six weeks and to walk with crutches or a cane for several weeks. His normal activities were also restricted. Nissen has enjoyed a near complete recovery, although he continues to suffer periodic discomfort in his left knee and is unable to engage in physical activities to the same extent as before the fall. Nissen makes no claim for any economic loss but seeks compensatory damages for the pain and suffering he contends resulted from the injury.

**3.** In his complaint, Nissen also asserted a theory of negligence that the Postal Service negligently maintained its premises by plac-

## II. Conclusions of Law

Nissen's sole claim asserts that the United States is liable for his injury under the FTCA due to the negligence of Calrow, its employee, in failing to cover her mouth or turn her head away from Nissen when she coughed.[3] Under the FTCA, the United States may be found liable "only if its actions would render it liable under relevant state law." *Shade v. Housing Auth. of City of New Haven*, 251 F.3d 307, 314 (2d Cir.2001). The relevant state law here is that of New York. "Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir.2002) (citing *Merino v. New York City Transit Auth.*, 218 A.D.2d 451, 639 N.Y.S.2d 784, 787 (1st Dep't 1996) and *Nathan W. Drage, P.C. v. First Concord Sec., Ltd.*, 184 Misc.2d 92, 707 N.Y.S.2d 782, 787 (N.Y.Sup.Ct.2000)).

■ Under New York law, a defendant in these circumstances owes a duty to exercise reasonable care under the circumstances. *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 117 (2d Cir.2000). Nissen contends that when Calrow coughed, the duty to exercise reasonable care required that she first cover her mouth and turn her head to avoid coughing on Nissen. The United States contends that no such duty existed. Neither party has cited any case, and independent research has revealed none, which addresses the duty of an individual to protect others from the foreseeable consequences of a cough. However, for two reasons, Nissen has failed to demonstrate that a duty existed

ing loose carpeting on the floor where Nissen fell. During trial, Nissen withdrew this theory of liability.

for Calrow to cover her mouth or turn her head before coughing.

■ First, there was no evidence presented that Calrow's act of coughing was volitional. The act of coughing may be either intentional, as when clearing one's throat, or unintentional, as when suddenly stimulated by an internal condition. Although the evidence established that Calrow was suffering a cold and was coughing on the morning of April 1, 2000, there is insufficient evidence to conclude that Calrow was sufficiently in control of her coughing to be able to turn her head or cover her mouth before she coughed as asserted by Nissen. In the absence of evidence of volition, Calrow owed no duty to Nissen to turn her head or cover her mouth before coughing. Second, the duty of Calrow and the United States was limited "to reasonably foreseeable accidents." *Robinson v. Government of Malaysia,* 269 F.3d 133, 145 (2d Cir.2001) (citing *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 568, 352 N.E.2d 868 (1976)). There is no evidence here that Calrow could have foreseen that Nissen or anyone else would be caused to fall as a result of Calrow's coughing. For this reason as well, Calrow owed no duty to Nissen to turn her head or cover her mouth before coughing.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that judgment is granted to defendant United States in all respects.

**IT IS SO ORDERED.**